The first case is BYD Company v. Vice Media, and I think we're ready to proceed. Good morning, Your Honors, and may it please the Court. BYD manufactures electric vehicles, personal protective equipment, and other essential products. It has never used forced labor in its supply chain. BYD is a reputable company that has even drawn a substantial investment from Warren Buffett. The false accusation that BYD uses slaves to produce its products would be devastating to BYD's business. Yet that's exactly what the defendant, Vice Media, used its platform to tell its readers. It took a report from a non-governmental organization and then completely fabricated and distorted that report to claim that BYD's products were supplied by slave labor. Well, you say that the ASPI report never says that BYD used forced labor in its supply chain, but it does say, quote, ASPI's research has identified 83 foreign and Chinese companies directly or indirectly benefiting from the use of Uyghur workers through potentially abusive labor transfer programs, and it has the information about the subsidiaries that both of you talk about in your briefing. I mean, I guess I'm seeing, you know, there's a difference in wording, but is there really an appreciable difference between what the report says and what the article says? Yes, Your Honor, because the report doesn't stop there. First of all, the report, even in the sections where it discusses the 83 companies, does use qualifications. It talks about things like directly or indirectly benefiting from using forced labor, which is not the same thing as saying that a company uses forced labor. One can indirectly benefit from forced labor in a number of ways. But more importantly, there's an appendix to the report where ASPI sets forth and says, this is what we have on each of these companies, and they go through each of these companies and this is the evidence that we have with respect to each of these companies. And when it gets to BYD, what does it say? It says BYD did business with a company named Dongguan, and Dongguan in turn owns a subsidiary named Hubei, and Hubei is implicated in forced labor. So it never actually says that BYD uses slaves to produce its products, and vice consciously disregarded the appendix. That's the plaintiff's theory. When you say consciously disregarded the appendix, what evidence is there of that, that in fact this was a deliberate or knowing misrepresentation, if in fact it was one? Your Honor, at this stage, evidence is not required. This is a pleadings motion. All BYD has to do is make a plausible allegation under Iqbal and Tuamli as to its theory of actual malice. In this case, BYD makes a plausible allegation, which is that vice obviously had the entire report in front of it, including the appendix. Vice was told by ASPI to go to the appendix. Vice relies on that figure with the diagram and the arrows that show Hubei with an arrow towards BYD. But is that your argument? I mean, this seems like you're coming down to the idea of, like, they got something wrong, but you have to show that this was knowing or reckless behavior as opposed to perhaps a mistake. And so the fact that, in your view, that this was false doesn't establish actual malice or doesn't even sort of get to the past of the stage of saying, well, they must have known because it's false. Your Honor, again, a plausible allegation at this stage is all that's necessary. The fact that at the end of the day, a jury might listen to this and say, I don't think you proved it, doesn't mean that we haven't made a plausible allegation. Plausibility does not require certainty. If there are two different ways of reading these facts, and one of them is a way of reading the facts in which it says, well, vice made a mistake and they were negligent, but they weren't reckless or they didn't know. But the other way of reading the facts is that vice had this appendix in front of them and consciously disregarded all the red flags that sent up with respect to the allegation that BYD uses slaves to produce its products. Then BYD gets past the motion to dismiss and into discovery with that. That's plausibility. Is there actually an allegation that they used slave labor as you supply chain? Does that not make a difference to you? Forced labor in the supply chain means that the people who were producing the parts that were used in BYD's products were slaves. That's what it means. Forced labor and supply chain means that there are parts that go into BYD's products that are supplied and they are supplied by factories that are forcing people to work there and produce those products. That is a direct connection between BYD and essentially enslavement. It's one of the worst things that you can possibly say about a company in this modern era. So what I want to emphasize here is that the district court ruling, which was that essentially that the allegations of actual malice were conclusory, this actually takes New York Times versus Sullivan and the careful balance that the Supreme Court struck and upsets it. Because the New York Times versus Sullivan case rejected a standard of absolute immunity for the press. It also rejected a negligence standard. It said we have to give breathing space to the press when they mess up. But on the other hand, we're not going to make them absolutely immune when they knowingly or recklessly defame people. So it set the standard in the middle. But right now, what the district courts are doing with this pleading requirement and with Iqbal and Twombly is they're saying that cases that are actually on the merits supposed to recover under New York Times versus can't get past a motion to dismiss because the plaintiff can't read the defendant's mind and they plead the facts they have, just like we did here. But the district court comes back and says, well, that's conclusory. That's not enough. So I think that what has to happen is that we have to look at what Twombly actually said. And what it said is you just need a plausible allegation. You don't need servantee. You're not going to know what was in the defendant's mind at the time they made their statement. But if you put something plausible in the complaint, if you articulate a plausible theory as to how they acted with reckless disregard, you should be able to then get into discovery and take discovery and find out what they actually knew. And just making sure I understand, the basis for plausibility here amounts to the differences between the allegations in the article and the state and the ASPI report. There's nothing else that we need to think about, right? That's not quite correct, Your Honor. There are some other facts alleged in the complaint, such as the fact that ASPI is a well-known bias source that issues bias reports. They're on one side of the China debate. By itself, that might not be enough for actual malice, but it's considered in the mix when considering the other allegations. In any event, I see my time is coming up, so I'm going to serve two minutes of rebuttal if the Court doesn't have any other questions. We'll hear from your adversary. Thank you. Good morning. May it please the Court. My name is Rachel Strahm, and I'm here for the Defendant Appley at Vice Media. I just quickly wanted to respond that, as Judge Livingston pointed out on page 26 of the appendix, the ASPI report specifically says that it's identified 83 foreign and Chinese companies directly or indirectly benefiting from the use of forced Uyghur labor. And the Vice article talks about how the ASPI report said this is one of the companies that has been identified as using forced labor. I think that the allegations between the ASPI report and the Vice article mirror each other almost exactly. And if that's not enough, what we actually have here is an illustration that has a subsidiary that everybody agrees uses forced labor with a direct arrow straight to BYD, which is in the report on page 45. Even if the Vice article and the ASPI report weren't direct mirrors, all we have here is an allegation that there was some falsity here, there was some difference, but of course, falsity and actual malice are two separate elements. With that, I'm happy to rest on the papers unless there's any questions. Thank you very much. Your Honors, if you actually compare what Ms. Strahm referenced in terms of the report with the Vice article, you'll see that what Vice actually did was remove all the qualifiers. The passage that Ms. Strahm read said directly or indirectly benefit from forced labor. What Vice says is that BYD was one of 83 companies, quote, identified as using forced labor. Under the Masson versus New Yorker test, that's a material change. One, the source is saying directly or vice changed it and said, no, they were identified as using forced labor. And Ms. Strahm referred to the arrow, the infamous diagram with the arrow in the ASPI report, but directly underneath that diagram is a direction to reporters, to readers to see the appendix. ASPI says, here's the diagram, now see the appendix to see the detail behind it. So once you get back to the appendix, you see that that. Can I ask you, does that cut against though your argument of actual malice if they're deliberately attempting, deliberately and knowingly printing something that is false and yet there's a link to the actual source? Does that cut against your argument that this was knowingly, they were knowingly publishing false information? A link to an actual source is relevant, but it doesn't defeat the plausibility of the allegation because the plausibility of the allegation is that Vice took this report, disregarded the portions of the report that would send up red flags about what it was saying and just went with BYD was identified as using forced labor. That's what they did. Now, again, Vice can argue to a jury that that's not enough, but here I think that's enough. Thank you, Your Honor. Thank you both and we'll take the matter under advisement.